[Smyley v. Reese.]

# Smyley, Administrator, v. Reese et al. 

53   89
124  319

## Final Settlement of Decedent's Estate.

1. *Wife; funeral expenses of; not chargeable against her statutory estate.*— Our statutes creating the wife's statutory estate, do not absolve the husband from his common law obligation to provide suitable sepulture for the wife, and he is not entitled to any credit, on the settlement of his administration of her estate, for such expenditures.

2. *Same.*—Whether the husband who had not ability to bury the wife, in a manner corresponding to her condition and fortune, should not be allowed to claim suitable funeral expenses out of her estate, is a question not presented in this case, and not affected by this decision.

3. *Counsel; employment of, by administrators.*—Under our system, executors and administrators are entitled to the advice and aid of counsel, in most matters connected with the discharge of their duties, whether involved in litigation or not; and this is especially true of partial and final settlements.

4. *Same; when administrator should be allowed credit for fees, paid to.*— Where such services are obtained by the administrator, in good faith, for his own protection, and not to antagonize the heirs or gain a personal advantage in opposition to his duty as trustee, he should be allowed counsel fees, it fair and reasonable, when gauged by the value of the estate and the services rendered.

5. *Same; when credit for, properly disallowed.*—Where exceptions are sustained to several items of credit claimed by an administrator, and as to which he had acted improperly and negligently, a credit should not be allowed him for the entire compensation paid to counsel for services rendered in the settlement; and if such a claim is presented *in solido*, it is properly rejected.

6. *Same.*—In such a case, the administrator is entitled to an allowance of reasonable counsel fees, only for such services as he was entitled to have, whether engaged in litigation or not, and for resisting exceptions to items, as to which he had acted in good faith, and was without fault.

7. *Gift by wife to husband; what necessary to uphold.*—A gift by the wife to the husband, of money constituting a part of the *corpus* of her statutory separate estate,—if it can be made otherwise than by will—can not be sustained, unless shown by the clearest evidence not to have been tainted by the influence growing out of the relation of trustee and *cestui que trust*, and that it was such as could be prudently made, and one which the trustee could conscientiously have permitted, if made to another for whom the wife entertained an affection.

8. *Probate court; jurisdiction of.*—The probate court has jurisdiction, on the husband's settlement of his administration of the wife's estate, to charge him with the *corpus* of the wife's statutory estate, received by him, during her life, as her statutory trustee.

9. *Hire of wife's slaves; when proper-charge against husband.*—The husband is properly chargeable, on settlement of his administration, with the hire of the wife's slaves, remaining in his service after her death.

10. *Administrator; when properly chargeable for failure to collect debts.*— An administrator is properly charged with the amount of a debt due the estate, and which he failed to collect, although he had ample time and opportunity, before the debtor became insolvent.

11. *Same; what interest chargeable with.*—An administrator is chargeable with interest on receipts until disbursed, unless he discharges himself by oath that he has not used the funds, and with the interest, as well as

[Smyley v. Reese.]

principal, of debts which he negligently failed to collect; and this liability for interest is not affected by the intervention of the late war.

12. *Same; when not error to tax costs against, personally.*—It is not error to tax the administrator personally, with costs of contest over items of credit, as to which he was at fault, and which the court disallowed.

APPEAL from Probate Court of Dallas.

The appellant, D. C. Smyley, married Elizabeth H. Reese, in November 1858. She died intestate in March following, her husband and several brothers, who were her only heirs at law, surviving her. In May 1859, the appellant was appointed administrator of her estate, which consisted of personal property valued at about $20,000. He made partial settlements in April 1867, and June 1870, and made final settlement in the probate court, on the 23rd day of July 1873.

The court having disallowed various items of credit claimed by him, and charged him with various amounts, on motion of the contestants, he reserved a bill of exceptions, and brings the case here by appeal.

Appellant was examined as a witness in his own behalf and also in behalf of the contestants. His testimony and the other evidence introduced, established the following state of facts:

At the time of the marriage, said Elizabeth had not received her distributive share of her deceased father's estate, which was in the hands of her guardian, T. M. Williams.

Shortly after the marriage, her slaves were delivered to appellant, who had them employed, on his plantation, in preparing to plant crops and in cultivating those already planted, at the time of the wife's death, and he kept them for the remainder of the year, for which period the court charged him with their hire.

A few weeks after the marriage, appellant received a thousand dollars from Williams, the wife's guardian. Appellant and his wife had just returned from a trip to New Orleans, and she said to him, at the time he received the money, "take this, and pay the expenses of our trip." None of this money was on hand at the time of the wife's death, and it had not been invested in property, "but had been spent between him and his wife." Appellant claimed that this sum was a gift by the wife to him, and that he was not liable to account for it; but the court required him to account for it, with interest from the date of the wife's death.

In December 1859 appellant obtained an order for distribution of the estate, including negroes, and received his share; but it being impossible to fairly allot the remaining

negroes, among those entitled to share in the distribution, he obtained an order of sale. The sale was made on the 19th of January 1860, on a credit until January 1st, 1861, with interest from date, Smyley becoming purchaser of some of the negroes for the sum of $3,225. On the final settlement, .Smyley claimed a credit for interest charged against him on this sum, between the 1st of February 1861, and the 1st day of February 1865; but the court disallowed this, and on motion of contestants, charged appellant with the amount of his purchase, and interest thereon, until the 1st day of January 1861, and with interest on the sum thus obtained from that date. The administrator excepted to this, "because it compounded the interest on said purchase."

Williams was appointed guardian of Mrs. Reese on October 26th, 1856, before her marriage. Appellant took no steps to compel him to a settlement before the commencement of the late war. Once before the war, and once after the war, appellant asked him to make a settlement, but each time he stated "that he could not do it, because he had some assets of his ward which he could not collect without suit." Before the war Williams "was considered good for small amounts," and both of his sureties were good and solvent, but became insolvent in 1865 or 1866 by the results of the late war. Appellant after the war, and in July 1867, obtained a decree against Williams and his sureties. When these proceedings were commenced, is not shown. By reason of the insolvency of Williams and his sureties, appellant obtained only a partial satisfaction of the decree, and, on motion of contestants, the court charged him with the uncollected balance.

Smyley claimed credit of $175, funeral expenses of the wife paid by him, and also $500 paid by him for a monument erected over her grave, by his direction. The funeral expenses and monument were suitable to the estate and condition in life of the deceased, and Smyley acted in entire good faith in paying these amounts. There was no evidence as to the husband's means or condition at the time of the wife's death. The court refused to allow a credit for these items. On a partial settlement made in 1867 appellant employed a competent attorney, to aid and advise him in making the settlement, and paid for such services the sum of $250. On this partial settlement, no objections appear to have been filed to his accounts. According to the settlement then had, he had received assets of the estate amounting to $8,687, and had made disbursements, and was entitled to credits amounting to $8,228.78, leaving a small balance in his

hands. In this account appellant was allowed credits for $2,200 invested in Confederate bonds, at various times between April 1863 and March 1864, also for the items for funeral expenses and the monument, and for the amount paid his attorneys on that settlement.

On the final settlement the credits claimed for Confederate money were withdrawn, and the court, holding that the amounts charged in the administrator's account of April 1867, consisted of the proceeds of property sold for division, the husband having received his half, were improperly placed on the debit side of the general account of the administrator, and ordered them stricken out, and also struck out credits for notes given by distributees for the share of property, purchased at the sales, &c., without disturbing items of credit, allowed in that account, for commissions, &c.

The administrator testified that he employed the attorney to aid and advise him in the partial settlement, in good faith; "that his attorney then advised him that he was entitled to a credit for the investment in Confederate money; that he was not chargeable with the $1,000 given him by his wife before her death; that he had given his attorney a memorandum of matters omitted with which he was chargeable, and that he had acted throughout all these matters in perfect good faith."

On motion of the contestants the court refused to allow a credit for the amount paid for attorney's fees on partial settlement, and also the amount paid for services of attorneys on the final settlement. The value of the services and reasonableness of the sums paid, were admitted, but it was denied that they constituted a proper charge against the estate.

On the final settlement the contestants moved to strike out or reduce items of credit, as to fourteen different matters in which the court sustained them. They also made three motions to charge appellant with various items, which the court overruled, and several like motions which were withdrawn. The administrator moved to be allowed various credits, some of which were allowed and others refused.

The court charged the administrator with the value of a horse sold by him; as the evidence in regard to this was not fully set out in the bill of exceptions, this court did not pass upon the question.

The court ordered that "all costs of the administration, which accrued prior and up to the contest on the final settlement, be paid by the administrator, and allowed as a credit on his final settlement; but that all costs caused by

[Smyley v. Reese.]

the contest in relation to items, as claimed and charged by the said administrator, which have been reduced and not allowed, and withdrawn by the administrator before the decision of the court, be paid by said D. C. Smyley, administrator, &c., for which execution may issue."

The administrator duly excepted to the rulings of the court below, and here assigns for error :

1. Refusal to allow credit for the attorney's fees paid on partial settlement.

2. Not allowing credit for amount paid for attorney's fees on final settlement.

3. Charging appellant with the $1,000 given to him by the wife during her life.

4. Not allowing credit for funeral expenses paid by the administrator, and amount paid for the monument.

5. Charging appellant with the hire of the negroes for the remainder of the year after the death of his intestate.

6. Charging appellant with the uncollected balance due on the decree against the guardian of the intestate.

7. Not allowing credit for interest during period from February 1st, 1861, to February 1st, 1865, on debt due by appellant for purchase of negroes.

8. Charging appellant with the amount of purchase of slaves and interest to January 1st, 1861, and interest on that sum thereafter.

9. Taxing the administrator personally with the costs accruing after the contest commenced.

PETTUS & DAWSON, for appellant.—The amounts paid for funeral expenses and the monument should have been allowed. They were suitable in every respect. Ordinarily such charges constitute a preferred claim against the decedent's estate. At common law the husband was generally bound to pay the funeral expenses of the wife, but is not the marrow of the rule founded on fact that all her personal property received by him became his property by virtue of the marriage? See Gregory v. Lockyear, 6 Maddock's Chancery, 90, where the husband was repaid out of the wife's estate funeral expenses paid by him.

2. The attorneys fees paid on the partial and final settlement should have been allowed. It is shown that they were reasonable, and necessary for the guidance and protection of the administration. 24 Ala. 250 ; 24 Ala. 295 ; 33 Ala. 214; 35 Ala. 442 ; 41 Ala. 604.

3. The probate court had no jurisdiction on appellant's

[Smyley v. Reese.]

settlement of his administration of the wife's estate, to deal with transactions occurring during the life of the wife. This might have been proper enough if the husband had been settling his trusteeship in a court of chancery. This was an attempt to settle his trusteeship in the court of probate. As he was both trustee and administrator the probate court had not jurisdiction to settle the trusteeship. *Carswell* v. *Spence*, 44 Ala. 205; *Hays* v. *Cockrell*, 41 Ala. 75.

4. Appellant should not have been charged with the hire of the slaves. 37 Ala. 518; 33 Ala. 160, and authorities in dissenting opinion of WALKER, C. J., in *Hays* v. *Cockrell*, 41 Ala. 88.

5. It was error to charge appellant with the uncollected balance on the decree against Williams. The facts proved do not establish such negligence as authorizes the debt to be charged against the administrator. 43 Ala. 109; 15 Ala. 328; 41 Ala. 604. The proof should have gone further than to establish the mere failure to collect the debt. It should have been shown that by due diligence the debt could have been collected.

6. No part of the costs should have been charged against the administrator on the final settlement. The record shows that the settlement was contested with determination; that many items sought to be charged against him were not allowed, and that he was credited with several items against the objections of the contestants. It is also shown that he delivered to the contestants some articles which he might have retained. 38 Ala. 695.

7. As to allowance of interest, see *Brown* v. *Hiatt*, 15 Wallace, 177. The principle upon which that decision is based, might well be applied to the condition of things existing here during the war. It was impossible to pay, except in worthless funds, and the law forbade payment of trust funds in anything but lawful money.

STONE & CLOPTON, *contra.*—1. At common law the husband was bound to pay the wife's funeral expenses. Schouler's Domestic Relations, 166; *Bradshaw* v. *Beard*, 12 Eng. C. B. (New Series) 344. Our statutes, creating the wife's statutory estate, have not absolved the husband from this common law duty. The case of *Gregory* v. *Lockyear*, cited by appellant, is so briefly reported that the precise principle on which the decision is put cannot be definitely ascertained. In that case the Vice Chancellor "expressed doubts whether the husband has the right to throw the wife's funeral expenses upon her separate estate," which greatly weakens, if it

1875.]OF ALABAMA.                    95

does not destroy the case as authority. In *Bertie* v. *Lord Chesterfield*, 9 Modern, 31, the opposite doctrine is asserted. These decisions were both made in reference to contract separate estates, over which the wife has much greater power than she has under our statutes. The best rule, in these cases, is that which governs in the matter of maintenance by a father of his infant offspring. It is only when the father is without means that the maintenance of the child will be cast on his own fortune. 34 Ala. 15. *Ex parte Boaz*, 31 Ala. 425. This rule applies to the maintenance of the wife 32 Ala. 227 ; 24 Ala. 337.

2. The court did not err in not allowing credit for the attorney's fees. The record shows that on the partial settlement the services rendered were not for the benefit of the estate, but for the individual gain of the administrator, antagonistic to the interests and rights of the distributees. Many of the items allowed on that settlement upon which the administrator advised with counsel, were improper—as for example the credits for Confederate money. Much of the litigation on the final settlement was provoked by the administrator's own wrong and negligence. Besides, as to many items the administrator was defeated. The compensation claimed is for *all* the services, without distinguishing or separating the items. 32 Ala. 231 ; 39 Ala. 716 ; 38 Ala. 695 ; 16 Ala. 221.

3. The husband was properly charged with the money claimed as a gift. No authority can be found sustaining such a claim, under the facts shown by the record.

4. On the wife's death the husband's trusteeship ceased, and he is liable to account only for the *corpus* of the estate. This can be compelled only in a court of law. The husband owing the debt, and being the administrator entitled to receive it, the obligation to pay and the right to receive being in the same person, the law operates a payment. The principle decided in *Hays* v. *Cockrell*, has no application here.

5. The hire of the slaves was properly charged. *Hays* v. *Cockrell*, 41 Ala. 75.

6. It is clear from the proof that appellant could have collected the decree against Williams, and he was properly charged with the balance due on it. *Harris* v. *Parker*, 41 Ala. 604.

7. There is nothing in the objection that the administrator was charged with compound interest on the purchase of slaves. 42 Ala. 225 ; 23 Ala. 544.

[Smyley *v.* Reese.]

BRICKELL, C. J.—1. The statutes creating the separate estates of married women, deprive the husband of rights which would have accrued, and could have been asserted at common law. They do not absolve him from the duties the common law imposes. *Rogers* v. *Boyd,* 35 Ala. 175. The common law compelled him to maintain his wife—to supply her with necessaries suitable to her situation, and corresponding with his social position, and the degree of his fortune. If the husband neglects this duty the wife may on his credit, against his will, obtain necessaries, and he will be liable for them. In such case she is presumed to have authority to bind him, but the presumption is made only to enforce a performance of the duty. Schouler's Dom. Rel., 85; 2 Kent. 128; Tyler on Inf. and Cov., 340. This duty of the husband did not arise from, nor was it solely dependent on, the common law principle, that marriage was a gift to the husband of the wife's estate—that he thereby became vested with an ownership qualified or absolute, of her property, and rights of property. The duty was as obligatory on the husband, to whom the wife brought no portion, as on him who had received the largest fortune. It was a consequence of the merger of the legal existence of the wife, in that of the husband. The marriage relation contemplates that the husband and wife shall live together, and "the power of umpire must be placed in the hands of the one or the other of them." This power, which is the power to rule the household, is committed to the husband. The wife is in subjection to, and dependent on, the husband; and from this subjection and dependence springs the duty to maintain her; as from the same relation of subjection and dependence arises the duty of maintaining the offspring of the marriage. The common law permitted parties entering into the marriage relation, to separate the wife's property from the husband's, and by contract to exclude the rights the husband would have otherwise acquired therein. From a separate estate thus created, the wife was not compelled to make any appropriation for her own support—nor had the person supplying her necessaries in the absence of a contract, express or implied, made by the wife, any equity to charge it. *Gunn* v. *Samuels,* 33 Ala. 201; 1 Bishop Right's of Married Women, § 895. The statutes creating separate estates, allow them to be charged for necessaries in the narrowest sense of that term. Such articles "of comfort and support of the household," "as the husband may be charged with *in invitum*—such necessaries for the maintenance and comfort of the family, as, in the absence of a proper provision by him,

his wife, or even a stranger, may supply to the family, and thereby fix a liability on him." *Durden* v. *McWilliams*, 31 Ala. 438. The husband is not relieved from his liability for such necessaries. The measure of his duty to furnish them, is the extent of the liability of the separate estate. In every suit to enforce this liability he is a party, and a personal judgment is rendered against him, corresponding in amount to the judgment of condemnation of the separate estate. *Ravisies* v. *Stoddert*, 32 Ala. 799. The object of the statute is not his relief, but it is to secure a suitable maintenance to the family.

Involved in the duty of maintaining the wife while living, is the duty of burying her on her death. Schouler's Dom. Rel. 166. Though the wife dies while living separate from her husband, he is bound to pay her reasonable funeral expenses, and if he does not make the provision, a person voluntarily paying them, is entitled to recover of him the amount so expended. *Ambrose* v. *Kerrison*, 4 Eng. Law and Eq. 361. The husband may remove from the grave of the wife, a stone there erected by her parents, without his consent. The right of removal rests on "the indisputable and paramount right, as well as duty, of a husband, to dispose of the body of his deceased wife by a decent sepulture in a suitable place." *Durell* v. *Haywood*, 9 Gray, 248. In *Bertie* v. *Lord Chesterfield*, 9 Mod. 31, the estate of the husband in possession of his devises, was charged with the payment of the testator's wife's funeral expenses. The husband had requested the plaintiff to see the wife buried. The judgment was not, however, rested on that fact, but solely on the ground that the huaband's estate is subject by law to pay the funeral expenses of the wife. A different decision seems to have been made in *Gregory* v *Lockyer*, 6 Madd. Ch. 90, but the ground of decision does not appear. The court may have been enforcing a charge on the estate created by will, or imposed in some other manner. If it proceeds on the ground of a general liability of the wife's separate estate, to the payment of funeral expenses, or of necessaries supplied her while living, it is in conflict with our own case of *Green* v. *Samuels*, *supra*. It is also in conflict with the principle on which a court of equity proceeds in charging the wife's separate estate. The principle is, that the wife by her own contract or appointment, has created the charge. As to separate estates recognized in a court of equity, she is regarded as a *feme sole*, having full power of disposition, if it is not restrained by the instrument creating it. Her act only can charge it. As she cannot by law enter into contract, and

fix on herself a personal liability, her own engagements must be void, or chargeable on her separate estate. Her own act, her own promises, express or implied, create the charge, and if these are wanting the separate estate is not liable. *Collins* v. *Rudolph,* 19 Ala. 616. It was never allowed the husband to charge the wife's separate estate with the maintenance of the wife during coverture. "Such an allowance," says Ch. Kent, "would be a fraud upon the marriage settlement by which it was expressly declared, that the husband was not to have any right or interest, in law or equity to any part of her estate." "The estate was not to be subject to his control or engagements; and, to render it chargeable with the maintenance of her or his family, would be in violation of the settlement." *M. E. Church* v. *Jacques,* 1 Johns, Ch. 450. If it is charged with the payment of the wife's funeral expenses, to that extent it is charged with a debt for which the husband is legally liable, and he acquires an interest in the estate, when it is indispensable to its existence that all liability for his debts, and all right or interest of his, shall be excluded. *Johnson* v. *Johnson,* 32 Ala. 637 ; *Lamb* v. *Wragg,* 8 Port. 73. The statute creating the separate estates of married women, excludes all marital right of the husband, as known to the common law, and declares such estate "is not subject to the payment of the debts of the husband." R. C. § 2371. The husband has not an equity to charge this statutory estate, as he had not to charge the separate estate created by deed, will, or other instrument, with necessaries furnished to the wife or to her family. *Rogers* v. *Boyd,* 33 Ala. 175. When, therefore, the appellant paid the funeral expenses of his wife, he paid his own debt only, and is not entitled to introduce it as a credit in his settlement of administration of the wife's estate. Whether, if it appeared that the husband had not ability to bury the wife in a manner corresponding with her fortune, he should not be allowed to claim of her separate estate funeral expenses on the same ground that a parent may charge his child's estate with maintenance, is not a question presented by this record, and must not be regarded as affected by this decision.

2. In a court of equity, as a general rule, costs are within the discretion of the court, and their allowance or refusal is controlled by the particular circumstances of each case. In suits between trustees and *cestuis que trust,* where there is a fund under the control of the court, subject to the discretionary power of the court, the general rule is that trustees shall have costs as a matter of course, out of the fund, unless they have forfeited the right by misconduct. Tiff. & Bull. on

Trusts, 702. The reason involved in the rule, is thus sta-
ted: "Trustees have no beneficial interest in the trust prop-
erty. They hold it for the accommodation and benefit of
others. If they perform their duties faithfully, and are
guilty of no unjust, improper, or oppressive conduct, they
ought not in justice and good conscience to be put to any
expense out of their own moneys." Perry on Trusts, § 899.
Where a trustee commits a breach of trust the general rule
is, that he must pay the costs of the suit to rectify the wrong,
but if there are other matters involved in the suit, in which
the trustee is found to be without fault, he may have his
costs in such other matters. Perry on Trusts, § 902. The
decisions of this court have applied these principles in de-
termining the allowance of counsel fees to administrators or
executors on their settlement in the court of probate.
Whether involved in litigation or not, any trustee is entitled
to the assistance and advice of counsel in the performance of
his duties, and there is neither justice nor good conscience in
charging him with the compensation of such counsel. The
care and diligence the trustee is required to exercise, is not
for his own interest, but for the interest of the *cestui que
trust.* The counsel assists and advises for them, and for
their protection. Of course, in seeking such advice and as-
sistance, and in the amount of compensation, good faith must
be observed. The protection of the trustee, and the preser-
vation of the trust estate, are alone considered in determin-
ing the propriety of an allowance of the compensation to the
counsel he may employ to aid and advise him. An admin-
istrator or executor, under the system prevailing in this
State, should have the assistance and advice of counsel, in
many of the duties devolving on him. The advice and su-
pervision of intelligent, conscientious counsel is to his pro-
tection, and the prevention of future litigation. So many
of the proceedings he must take are statutory, and their
value dependent on their conformity to the statutes author-
izing them—so many of them are practically *ex parte,* and
there is, and has been, such a "lamentable looseness," in
keeping the records of the court, before which he must pro-
ceed, that a prudent man, even at his own expense, would
prefer the aid and assistance of counsel, to the hazards he
would incur in acting without it. When, therefore, an ad-
ministrator or executor, procures the aid and advice of coun-
sel in his administration, in good faith, for his own protec-
tion, and that of the estate, paying only such compensation
as is fair and reasonable, when considered in connection with
the value of the estate, and the services rendered, he should

[Smyley *v.* Reese.]

be allowed a credit for such compensation. *Pickens* v. *Pickens*, 35 Ala. 442. The compensation paid counsel was for advice and services to the administrator on a partial settlement in 1867. The reasonableness of the compensation is not disputed, but it is said the administrator should not be allowed a credit for it, because the services were for his own benefit. When the services were rendered, there does not seem to have been any controversy between the administrator and the heirs, but that is not material in determining the liability of the estate. Nor is it material that the services rendered were for the benefit of the administrator, unless it appeared he was seeking a personal benefit, in opposition to his duty as trustee. If that appeared, he would not only be refused an allowance of such compensation, but would be subjected to a loss of compensation for his own services. Any advice and assistance rendered a trustee, is in a narrow sense for his benefit. It may protect him in action or in passiveness. A good reason for making a fair and just allowance to him for the aid of counsel, is that he is acting wholly in a fiduciary capacity, for the benefit of others, and so long as he is honest and diligent, should not be subjected to the dangers of personal liability. That he guards himself from such liability, and keeps within the line of his duty, and thereby secures a personal benefit, is a reason for and not against the allowance of such compensation. It is in making a settlement partial or final, that an administrator has special need of the aid of counsel. The vouchers on which he relies as credits are to be examined—the facts which show their justice as charges against the estate, are to be considered—the evidence which should be adduced to satisfy the court of their correctness, or to support them if controverted, is a matter on which counsel alone can advise. So far as is disclosed in this record, the administrator in good faith, for his own protection, and not to antagonize, or gain any advantage over the heirs, sought the advice and assistance of counsel in making this partial settlement, and though errors may have occurred in it, they do not appear to have been wilful, and he should have been allowed a credit for the sum paid them, its reasonableness being conceded.

3. On the final settlement of the administration, numerous exceptions were taken to the accounts of the appellant. Some of these were withdrawn, some were disallowed, and others were sustained, materially increasing the liability of the appellant. The appellant claimed a credit for the compensation he had paid to counsel representing him. The reasonableness of the compensation was not controverted,

and the only question raised was, whether under these facts, the appellant was entitled to credit for counsel fees. As we have already said, the appellant was entitled to the aid of counsel on the settlement, whether his accounts and vouchers were litigated or not. Under the principle on which a court of equity proceeds in allowing costs to trustees, (and the costs embrace the fees of counsel,) so far as the administrator was without fault—so far as the exceptions taken were overruled or withdrawn—he should have been allowed counsel fees, and should have been allowed them so far as recoverable, for advice and assistance, to which he would have been entitled whether there was litigation or not between him and the *cestuis que trust*. If the labors of counsel were increased, and of consequence their compensation increased, because of the exceptions sustained, this increase of compensation should not be allowed. Without distinquishing in this respect, the claim was for a credit for the entire compensation of counsel. Presented in this form, the court did not err in refusing to allow the credit. The compensation must be apportioned, so as to charge the estate with a reasonable allowance for the advice and assistance rendered the administrator, so far as he was entitled to it, and for resistance of the exceptions which were overruled or withdrawn.

4. During the life of the wife, the appellant as her husband, received one thousand dollars from her guardian. This sum, he claimed as a gift from the wife. If a wife can otherwise than by will, make a gift to her husband of her statutory separate estate, the evidence in this case is not sufficient to support a donation from wife to husband, especially when there is the superadded relation of *cestui que trust*, and trustee. No such donation is ever supported, unless it satisfactorily appears that it is not tainted with the influence springing out of the relation, and that it could properly and prudently be made by the donor; and that in the exercise of the good faith and diligence, which the husband and trustee must exercise for the protection of the wife and *cestui que trust*, it was such a donation as he could conscientiously, "free from the taint of selfish interest," have permitted made to another, for whom the wife or *cestui que trust* had an affection, that would stand as the reason of the gift. The motive of the gift was the reimbursement of the husband, of expenditures he had voluntarily made, and for which he alone was legally liable. If, when he made them, he had been possessed of the wife's money, he could not properly have applied them to such expenditures. To support such a

gift, would open the way for a transfer to the husband of the wife's separate estate, in violation of the spirit and policy of the statutes creating it.

5. The death of the wife was a dissolution of the relation of trustee and *cestui que trust.* When the appellant became administrator, he was in that capacity chargeable with the *corpus* of the wife's separate estate. Whatever moneys he had received during the life of the wife, which constituted her statutory estate, was a debt due from him. The legal title to this debt—the sole authority to collect it, was vested in him. The right to demand, and the obligation to pay co-existing in him, the debt was extinguished by a legal presumption of payment. *Ragland* v. *Colbourn,* 36 Ala. 606. Charging him with such debt does not involve any settlement of his trusteeship. It is nothing more than the ordinary charge of an administrator with a debt due from himself to the intestate.

6. The husband as trustee, during the continuance of the marriage relation, is entitled to the income, the rents and profits of the separate estate of the wife, without liability to account for them. The purpose in securing them to him, is the support and maintenance of the family, and the avoidance of the distressing litigation, marring the peace of the family, which would almost inevitably ensue, from holding him to an account of his expenditures. When the relation is dissolved by the death of the wife, the husband's right to such income ceases. The beneficial interest in the estate, is by law transmitted to those appointed to succeed to it, or to whom the wife may bequeath or devise it. If, after her death, he receives such income, he receives that which belongs to another and must account for it. The appellant was properly charged, therefore, with the hire of the slaves after the death of the wife, and while they remained in his service. He is not in any proper sense a tenant of the wife's personal property. He has not a beneficial interest or ownership in it. He takes its income solely for the reasons stated. And no analogy drawn from the rights of a tenant for life to emblements, is applicable to him. *Hays* v. *Cockrell,* 41 Ala. 70.

7. The court committed no error in charging the appellant with the debt due from the guardian of the wife. After his qualification as administrator he had ample time to have made collection of the debt, and the guardian and his sureties for two years at least, seem to have been of ability to respond to it. If he choose to rely on statements made by the guardian that he was not prepared to settle finally—statements

[Wright v. Evans.]

which, if true in point of fact, would have been no answer to legal proceedings for a settlement—he must bear the loss resulting from his failure to take and ' pursue such proceedings.

8. The charge against the administrator of $80, for the horse sold Mrs. Reese, is not proper if it formed part of the note given by her, which the administrator by the consent of the distributees surrendered to her. The bill of exceptions is not clear in its statement of the facts on which this charge is rested, but as the judgment must be reversed, on another hearing, the facts can be fully ascertained. If the distributees released the debt, there can be no reason for charging the appellant with it.

9. An administrator is chargeable with interest on his receipts until disbursement, unless he discharges himself by oath that he had not used the funds. R. C. § 2148. If he fails to collect debts, he is chargeable with interest on such debts, as well as principal. The object is the indemnity of those injured by his negligence. ⟨ The war did not suspend or affect his liability for interest.

10. The costs seem to have been taxed in accordance with the rules laid down by this court. *Jones* v. *Dyer*, 16 Ala. 221; *Henderson* v. *Renfro*, 31 Ala. 101.

For the error we have pointed out the decree is reversed, and the cause remanded.