Spear, J.
The facts shown by the record, so far as they are necessary to an understanding of the points decided, are as follows: Nancy McClellan, a married woman, died about January, 1879, testate, leaving an estate of her own, and a husband surviving her, who also had property. The will named as executor W’m. S. McClellan, a son of the testatrix, who upon the probate of the will, took out letters testamentary, and at once entered upon the discharge of the trust. As such executor he paid from the assets of the estate, as expenses of the h^st sickness, physicians’ bills; also expenses of her funeral, and for a tombstone. The physicians who attended were called by the son (William S.) at request of the mother. The coffin and other purchases for the funeral were made by the son. It does not appear that the husband took any action in the way of employing either the physicians or undertaker. The executor also claimed to have paid certain taxes on the lands of deceased • during her life, a portion of them more than six years before the death of the testatrix.
To the account of the executor filed in the probate court asking credit for all these payments, Mary J. Eilson, a daughter of Mrs. McClellan, and legatee under the will, filed exceptions, in which, among other grounds of exception, she urged as to divers items of taxes, that they were barred by the statute of limitations. The probate court sustained all the exceptions. On appeal to the common pleas by the executor, that court upon trial sustained the exceptions as to the charges for expenses of last sickness and of the funeral, and overruled them as to the tombstone and the charges for taxes. The district court reversed the judgment of the common pleas as to the items of taxes, to which the statute of limitations had been pleaded, and affirmed the judgment of the common pleas in all other respects. To reverse this judgment of reversal the present proceeding in error is brought.
We think the executor was justified in paying the funeral expenses and those of last sickness, and that he should have been allowed for such items in his settlement. *186 The contention is that he was not so justified, because the expenses were a debt against the husband and the executor should have compelled the undertaker to look to him. As to expenses of the funeral. Section 6090? Revised Statutes, provides that every executor shall proceed with diligence to pay the debts of the deceased, and shall apply the assets in payment of debts: First. The funeral expenses, those of last sickness, and the expenses of administration. Second. The allowance made to the widow and children Tor their support for twelve months. Another section permits the executor to sell property of the estate before letters testamentary are granted to pay funeral expenses, but for no other purpose. If within the meaning of the statute the funeral expenses are to be considered as debts of the deceased woman there would seem to be reason for regarding the statute as imperative. They manifestly can not be treated as contract debts, but that, as regards the estate of a man, such expenses may be regarded as debts, nevertheless, appears to be settled in this state. The statute speaks of them as debts. They are classed under the same head as the allowance to the widow for a year’s support. In the case of Allen v. Allen, 18 Ohio St. 234, where the question was directly made, the court sustained the action of the court below, where the allowance was treated as a debt, and held that “the allowance of a sum of money to the widow and child, under section 45 of the administration act, is classed among the debts of the deceased to be paid in the order specified in that section.” If allowance for a year’s support of widow is a debt it follows that funeral expenses are equally so. But, as before stated, the debt does not rest upon contract. The inability of a married woman to bind herself by contract generally, therefore, furnishes no reason why her estate should not be bound. If the statute applies to the estate of a married woman it is bound; if it does not it is not bound. In terms it does apply. The language is, “ every executor and administrator shall pay,” etc. Unless there is good reason founded upon prin *187 ciple why the married woman’s estate should be excepted, then no exception should be made. It is urged that such good reason is found in the fact that at common law there is a duty upon the husband to dispose of the body of his deceased wife by decent sepulture in a suitable place. This is conceded, and it is not intended here to weaken the force of that duty, nor to impair the liability of the husband for the expenses of such burial. But the husband may be without means and unable to procure the services of those whose business it is to bury the dead, though the wife leave an abundance. "What shall be done in such case? Shall the body remain unburied? If in such circumstances it is proposed to resort to the wife’s estate for such expenses, it must be upon some principle, some rule. What shall it be? We have seen that the law of contract does not aid. She can not, any more than could a deceased husband as to his funeral expenses, be presumed to have contracted. Plainly, then, it must be by the force of legislation. That we have, and if we apply it in "any case to the estate of a deceased married woman, it is difficult to see why, upon principle, it should not be applied to all. If we undertake to make arbitrary exceptions and distinctions, then the rule fails, for if it can not rest upon the doctrine of a statutory debt, and charge upon the estate, it is not easy to find satisfactory foundation for it. Besides, if the application of the statute be limited to cases where the husband is insolvent, then we impose upon the one who spends time and money upon the conduct of the funeral the burden of first exhausting the liability of the husband by suit, or at least demonstrating his insolvency. A decent regard for the proprieties of the situation would seem not to require this.
We think the statute was based upon a well recognized necessity, and that such debts may be regarded as created by statute from necessity, and as a charge upon the estate, the same as the necessary expenses of administration, and the statute as furnishing the rule of liability. Patterson v. Patterson, 59 N. Y. 574. The burial of the dead is a matter *188 of necessity. The public health requires that it be done, and a proper public sentiment equally requires that it be done decently. Rex v. Stewart, 12 Ad. & Ell. 773. “ The estate in the hands of the executor is bound by law for the payment of the expenses of the decent interment of the dead.” Hapgood v. Houghton, 10 Pick. 154. The statute of Massachusetts is similar to that of Ohio, and the court is here speaking of the effect of the statute. It is clear that the expense should be required to be met by any estate which the deceased may leave. Is there any reason for saying that this most reasonable requirement should not apply where the deceased is a married woman ? As before stated, we regard the liability as resting on the statute, and upon that wholly. This must have for its basis, in large measure at least, considerations of public policy arising in the necessity of the case. That the dead might have proper sepulture, a clear, easily understood provision as to recompense for the expense was required. That provision we find in the statute. The question, then, is, do not considerations of public policy apply as well to the case of a married woman as to a man ? The necessity in the individual instance may or may not be as great, but where is the difference in principle?
Divers authorities are cited by counsel for defendant in error, but we find none presenting the precise question presented here as to the funeral expenses. Sears v. Giddey, 41 Mich. 590, is specially relied upon. In that case the surviving husband, with the son of a deceased wife by a former marriage, went together to the u udertaker’s and there ordered the casket and other goods for the funeral. Nothing was said about payment, or who was to be charged. The charge, however, was made to the husband, and the credit apparently given to him. The action was by the undertaker against the husband on the account. He sought to defend, on the ground that the wife had property which she had willed to the son, and therefore he should pay. The court held, and we have no doubt rightly, that the husband must pay. In deciding the case, Cooley, J., uses this significant *189 language: “A funeral can not be delayed for judicial inquiries to determine upon whom the moral obligation to proceed with it rests most heavily.” In other words the undertaker may conduct the funeral decently and in order, and look to such person as ought to pay for his recompense. In that case it was the husband. In Gunn v. Samuel, 33 Ala. 201, an insolvent husband called in the plaintiff', a doctor, to attend his sick wife, her children and slaves. The wife was not consulted and gave no order. During her last illness she requested that a slave be sold to pay the doctor’s account. The court held that it being the legal as well as moral duty of the husband to furnish medical attendance for his sick wife, a legal liability rests on him to pay, and her request did not impose an original liability or make her estate responsible, though if she had made a contract originally, express or implied, to pay the doctor, he would be entitled to recover. Smyley v. Reese, 53 Ala. 89, is, perhaps, a stronger authority for defendant in error. In that case the husband, as administrator of his deceased wife, paid the expenses of her funeral from the assets of the estate and asked to have the amount allowed in settling his accounts, which was refused, the court holding that the statutes of that state “ creating the wife’s statutory estate do not absolve the husband from his common-law obligation to furnish suitable sepulture for his wife,” and that the administrator, in paying the funeral expenses, was but paying his own debt. The question of payment by an executor, not the husband, who had ordered the expenses, is not in that case. A holding contrary to the doctrine of the last case was made in Gregory v. Lockyer, 6 Maddock, 90, where the husband having paid the funeral expenses of the wife, and made a claim before the master to have them repaid by the executor from the separate estate of the wife, the separate estate was by decree ordered to be applied in payment.
The question is not simply whether the husband is liable' as between him and the undertaker, but may not the estate of the wife also be liable, and may not the executor, having *190 ordered the expense, be justified in paying the claim from that estate? If not, then a woman may die leaving thousands in lands, money, and bonds, and if she happen to leave a husband, and he insolvent, the body may lay uneared for until some charitable friend comes to the rescue, or it be taken care of and buried by the town. Public decency and a just regard for an enlightened sentiment forbids.
True, the wife’s property may not be taken for the husband’s debt. But if the debt may be treated, as we think in this case it may be, as well that of the wife as of the husband, it would not seem inequitable to allow her estate to bear the burden, though that does serve to exonerate him. At common law the husband and wife were one, and that one was the husband. Not so now. The common-law right in and power over the wife’s property by the husband is almost entirely taken away by our legislation. All estates and property, including rights in actiou belonging to her at marriage, or which come afterward by conveyance, gift, devise, or purchase with her separate money or means or due as wages of her personal labor, or growing out of the violation of her personal rights, together with rents, incomes, issues, and profits, are her separate property. As to the real estate she may rent it for three years, and by will dispose of it entirely at her decease, and the personal estate she may control and dispose of absolutely without the husband’s consent. And as to all this separate property she may sue and be sued as if she were unmanned. Ho has no control whatever over the personal property, except it be reduced to his possession with the express assent of the wife, and mere care, occupancy, and use is not to be deemed a reduction to possession unless by the terms of the express assent full authority is given him to dispose of it for his own use. Curtesy initiate, as it existed at common law, is now held not to exist in Ohio, and the right of curtesy is conferred only on surviving husbands in estates of which the wives die seized. It appears plain by this that the relations of the husband and wife as to property have greatly changed in this state by statute, and that much of *191 the reason for the rale that the husband’s liability should be held to be so exclusive as to make impossible the subjecting of the wife’s separate estate to payment of expenses resulting from her necessities has vanished with the change. If the reason for the rule is in large measure gone because of these statutes, we may with some willingness be ready to see the rule, by virtue of other statutes, in equal measure, disappear.
As to the physicians’ bills for attendance during last sickness, the record shows that they were incurred by direct procurement of the deceased. That they were for her benefit admits of no doubt. She had the power to make the same a charge upon her separate estate. And while there are many reasons for saying that such expenses are made by the statute debts against and charges upon the estate of the deceased, in like manner as funeral expenses are, there is the additional consideration that the charge is also made by the deceased herself.
We expressly disclaim any purpose of deciding what is not before us. We hold that, under the circumstances, the executor had the right to follow the statute; to pay the physicians’ hills aud the fuueral expenses from the estate of the testatrix, and having paid them has now the right to be allowed for such payments.
No question is made here as to the tombstone. The court of common pleas approved of that item and ordered it paid. The district court affirmed the judgment as to that, and there the matter was allowed to rest. Regarding the items of taxes, we find sufficient ground in the record to warrant a reversal of the finding and judgment of the court of common pleas by the district court irrespective of the question of the statute of limitations, and we express no opinion upon the question raised by the exceptions based upon the statute. The district court affirmed the judgmeut below as to all the items of taxes except the first twelve, and no one asks a reversal of that action.
It follows that the judgment of the court of common pleas sustaining the exceptions to the charges for funeral *192 expenses and of last sickness, represented by vouchers, one three, four, five, and six, and of the district court affirming such judgment, will be reversed, and the judgment of the district court as to the items of taxes represented by voucher number ten, in part reversing the judgment of the common pleas and in part affirming the same, is affirmed. The probate court will be directed to allow to said executor in his settlement the items represented by vouchers one, three, four, five, six, seven, and all items of taxes except the first twelve. The costs of this proceeding in error are adjudged against both parties in equal proportions.