JOSEPH KAELEMAKULE *v.* VIOLET LINCOLN KAELEMAKULE.

No. 2153.

ARGUED NOVEMBER 15, 1934.          DECIDED DECEMBER 17, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The judge of the first circuit court, division of domestic relations, has reserved to this court the following question: "Has the circuit court of the first judicial circuit, Territory of Hawaii, division of domestic relations, the authority, when not specifically reserved in the statute and upon a proper showing as to the financial condition of the parties, to award permanent alimony to a wife whose hus-

band has obtained a decree of divorce from her on the ground of his own leprosy?"

There are in this jurisdiction two statutes relating to the granting of permanent alimony in cases of absolute divorce. One of these is section 2979, R. L. 1925, which is as follows: "Upon granting a divorce for the adultery or other offense amounting thereto, of the husband, the judge may make such further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to provide such suitable allowance for the wife, for her support, as the judge shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." The other is section 2973, R. L. 1925, which reads: "In every suit for divorce where a decree is granted to the libellant on the ground of the incurable insanity of the libellee, or on the ground that the libellee is afflicted with leprosy, the court may, at any time after entering such decree, revise and alter the same so far as the support and maintenance of the insane person or person afflicted with leprosy is concerned, and may provide for such maintenance by the libellant out of any property or earnings acquired by the libellant subsequently, as well as previously, to the decree of divorce; and the court making such order for maintenance, may, in its discretion, require the libellant to give security to the satisfaction of the court for the faithful execution of the same."

The first of these sections confers upon the judge the power to award alimony when the wife is the libellant and a divorce is granted her on any of the statutory grounds. It does not confer such power when the husband is the libellant and the divorce is granted him on a ground authorized by statute. The second statute authorizes the judge to award alimony when the *libellant* obtains a di-

vorce on the ground of the insanity or leprosy of the *libellee*. In the instant case the husband was the libellant and obtained a divorce from the libellee on the ground of his own leprosy. So this statute does not under these circumstances confer upon the circuit judge power to award alimony.

The common law imposes upon the husband the duty to support his wife so long as she is free from conjugal fault and our statute recognizes such duty. Speaking of this common-law duty it was said by Chief Justice Brickell in *Smyley* v. *Reese,* 53 Ala. 89, 96: "The common law compelled him" (the husband) "to maintain his wife—to supply her with necessaries suitable to her situation, and corresponding with his social position, and the degree of his fortune. If the husband neglects this duty the wife may on his credit, against his will, obtain necessaries, and he will be liable for them. In such case she is presumed to have authority to bind him, but the presumption is made only to enforce a performance of the duty. Schouler's Dom. Rel., 85; 2 Kent. 128; Tyler on Inf. and Cov., 340. This duty of the husband did not arise from, nor was it solely dependent on, the common-law principle, that marriage was a gift to the husband of the wife's estate—that he thereby became vested with an ownership qualified or absolute, of her property, and rights of property. The duty was as obligatory on the husband, to whom the wife brought no portion, as on him who had received the largest fortune. It was a consequence of the merger of the legal existence of the wife, in that of the husband."

The question arises whether the husband is relieved from his duty and the correlative right of the wife is lost when he obtains a divorce from her on the ground of his own leprosy. To answer this question in the affirmative would be to announce a rule of law so shocking to the moral sense and so out of harmony with the principles of jus-

tice as to be intolerable. Until the wife by her own misconduct absolves the husband from this obligation it continues. See *Clifton* v. *Clifton,* 98 S. E. (W. Va.) 72, where it is said: "It cannot be doubted that there is a legal and binding obligation upon every husband to support his wife, unless she, by her conduct, relieves him thereof." Courts are powerless in the absence of legislative mandate to relieve him of this duty by merely dissolving the marriage relation at the behest of the husband on a ground that does not involve the wife in the breach of her conjugal duty.

While it is often said by law writers that the judicial dissolution of a marriage relieves the husband from his marital obligations, including that of support, we do not believe that this principle is applicable to a situation like that presented by the reserved question. In all the cases we have examined the rule has only been applied where the husband obtained a divorce because of some connubial fault on the part of the wife. The fundamental reason for the rule in such cases is that the wife has herself forfeited her right to support. The release of the husband results not from the divorce but from the wife's misconduct. When he, because of her misconduct, lives separate and apart from her he is no more liable to her for support than if the marriage were dissolved. The decree of divorce is merely a judicial ascertainment and declaration of the wife's transgression and the removal of the restrictions which the law places upon married people. To say that a husband who voluntarily obtains a divorce on the ground of his own leprosy, although he be authorized by statute to do so, can defeat the right of his blameless wife to his support would be to sanction an unconscionable and perhaps a disastrous wrong. The husband might be possessed of great wealth and the wife, if deprived of his support, be left penniless and an object of charity. We know of no English-speaking court that has placed its imprimatur

upon such an injustice. Our own statutes certainly do not compel us to do so. At most the legislature has made no specific provision for alimony under the circumstances of this case. It has, however, uttered no word forbidding it.

It cannot be said that our courts, in the absence of legislative prohibition, are powerless to protect the rights of the libellee in the instant case. It is inconceivable that a court which has the power to release the husband from his marital status is impotent to protect the wife who has faithfully lived up to her marital obligations. Such a conception would be contrary to the spirit and policy of the law. It would be to acknowledge the right and at the same time confess inability to enforce it.

In *Lacey* v. *Lacey*, 95 Ky. 110, the court had before it a case in which the husband was entitled under a statute to sue for a divorce on the ground of his abandonment of his wife whether she was at fault or not. Kentucky had an alimony statute almost identical with section 2979, R. L. 1925, quoted *supra*. The Kentucky court held in effect that the wife being without fault did not by the divorce granted the husband lose her right to his support and granted her alimony. We believe this to be a sound precedent for the view we take.

There is another reason why we think the wife is not remediless. Under the statute she was as much entitled to a divorce because of her husband's leprous condition as he was. If she had chosen either by an independent suit or by a cross-libel to invoke the jurisdiction of the court in her own behalf and had obtained a divorce there can be no doubt under section 2979 of her right to alimony or of the power of the court to grant it. Let it be supposed that either before or after the husband's libel was filed she had brought a suit for divorce against him and the trial judge had for any reason heard the husband's case first and

granted him a divorce, it could hardly be said that because the bonds of matrimony had been severed at the husband's instigation the judge was without power to protect her right to alimony to the same extent as if her suit had been tried first and a divorce granted her. Under these circumstances the husband having been granted the divorce it would become unnecessary to consider the wife's libel. She would therefore be in the same position as if she were not suing for a divorce—just the position, it may be assumed from the record before us, she is now in.

Although it does not appear from the record that she had sought a divorce, her failure to act is without effect upon her right to alimony and the jurisdiction of the court to grant it. That she has not abandoned her claim but is insisting on it is evident from the reserved question.

The reserved question is answered in the affirmative.

*O. P. Soares* (also on the brief) for libellant.

*C. S. Davis* (*W. Y. Char* on the briefs) for libellee.